# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: November 16, 2017

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | UNPUBLISHED |
| BRIAN DEMPSEY *and* | * | |
| CLAIRE DEMPSEY, *parents of* | * | |
| K.J.D., *a minor*, | * | |
| | * | |
| | * | No. 04-394V |
| Petitioners, | * | |
| | * | |
| v. | * | Chief Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; Vague; |
| AND HUMAN SERVICES, | * | Block Billing; Unnecessary |
| | * | Entries; Administrative Tasks; Improper |
| Respondent. | * | Documentation of Costs; Autism. |
| | * | |
| * * * * * * * * * * * * * | | |

<u>Michael G. McLaren</u>, Black McLaren, <u>et al.</u>, PC, Memphis, TN, for petitioners.
<u>Ryan Daniel Pyles</u>, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On March 12, 2004, Brian and Claire Dempsey ("petitioners") initially filed a "Short Form Autism" petition for compensation under the National Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 <u>et seq.</u> (2012) ("Vaccine Act"), on behalf of their son, K.J.D., a minor. <u>See</u> Short Form Autism Petition For Vaccine Compensation dated Mar. 12, 2004 (ECF No. 1) at 1. By filing that "Short Form Autism" petition, petitioners in effect alleged that K.J.D. suffered from autism, and that his autism was caused by either or both (1) the MMR (measles, mumps, rubella) vaccine, and (2) vaccines containing thimerosal, a mercury-based preservative contained in a number of childhood vaccines until about 1999. <u>See</u> <u>Autism General Order #1</u>, Exhibit A, Master Autism Petition for Vaccine Compensation, 2002 WL 31696785, at *8 (Fed. Cl. Spec. Mstr. July 3, 2002).

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to delete medical or other information, that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, she will delete such material from public access.

On December 30, 2014, petitioners filed an amended petition,[2] alleging that the MMR, oral polio virus (OPV), and/or varicella vaccinations administered on October 25, 1999, caused various neurological injuries, including complex epilepsy, epileptic encephalopathy, and developmental regressions.  See Amended Petition dated Dec. 30, 2014 (ECF No. 59) at 3.

A fact hearing was held in Pittsburgh, Pennsylvania on October 28, 2015, followed by an entitlement hearing held in Washington, D.C. on January 14, 2016.  Thereafter, on February 23, 2017, then-Special Master Hastings issued an Entitlement Decision concluding that petitioners are not entitled to compensation.  Dempsey v. Sec'y of Health & Human Servs., 04-394V, 2017 WL 1058480 (Fed. Cl. Feb. 23, 2017).  The parties filed a joint notice not to seek review of the special masters' Entitlement Decision on March 9, 2017.  See Joint Notice Not To Seek Review of Decision dated March 9, 2017 (ECF No. 103).  Judgment entered in this case on March 13, 2017.  See Judgment dated March 13, 2017 (ECF No. 105).  Petitioners now request an award of attorneys' fees and costs.[3]

## I.      The Instant Motion

On September 1, 2017, petitioners filed an application for attorneys' fees and costs, requesting $126,540.50 in attorneys' fees for their counsel, Michael G. McLaren of Black McLaren Jones Ryland & Griffee ("McLaren Firm"), and $37,215.14 in attorneys' costs, for a total of $163,755.64.  Petitioners ("Pet'rs'") Application ("App.") dated September 1, 2017 (ECF No. 108) at 1, 11.  In accordance with General Order #9, petitioners have filed a signed statement indicating that they incurred out-of-pocket expenses in the amount of $120.00.  Id. at 3-4; See Pet'rs' App., Ex. 3.  They additionally seek reimbursement of those out-of-pocket expenses.  Id. at 11.

Respondent filed a response to petitioners' application on September 5, 2017.  Respondent's Response ("Resp't's Resp.") dated September 5, 2017 (ECF No. 109).  Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs."  Id. at 1.  Respondent adds, however, that he is "satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case."  Id. at 2.  Additionally, he "respectfully recommends that the [undersigned] exercise [her] discretion and determine a reasonable award for attorneys' fees and costs."  Id. at 3.

---

[2] Petitioners filed their amended petition as a "Motion to Amend Petition For Vaccine Compensation," attaching "Exhibit 1" labeled as "[Proposed] Amended Petition For Vaccine Compensation."  See Amended Petition dated Dec. 30, 2014 (ECF No. 59).  This document was referenced by then-Special Master Hastings, the special master who issued the Entitlement Decision in this case, as the "Amended Petition."  Dempsey v. Sec'y of Health & Human Servs., 04-394V, 2017 WL 1058480, at *6, n. 6 (Fed. Cl. Feb. 23, 2017).  Thus, the undersigned will also follow this same naming convention.

[3] Petitioners seek attorneys' fees and costs on behalf of their current counsel of record, Michael G. McLaren, who became the current counsel of record on March 12, 2014.  See ECF entry of March 12, 2014 (granting a motion to substitute attorney for Mr. McLaren).

The case was reassigned to the undersigned's docket on September 12, 2017.  See Notice of Reassignment dated Sept. 12, 2017 (ECF No. 111).  For the reasons discussed below, the undersigned awards petitioners a total of $123,369.10 in attorneys' fees and costs to Mr. Michael G. McLaren, and $120.00 for petitioners' out-of-pocket costs.

## II.     Reasonable Attorneys' Fees

Under the Vaccine Act, petitioners are able to recover "reasonable attorneys' fees" and other costs. 42 U.S.C. §§ 300aa-15(e)(1) (2012).  Even if petitioners are not awarded compensation for their claim, they are still permitted to collect attorneys' fees and costs if "the petition was brought in good faith and there was a reasonable basis."  Id.  Respondent does not argue that the case lacks good faith or a reasonable basis, and the undersigned likewise agrees that the case was brought in good faith and that a reasonable basis existed.

While respondent did not contest the billing rate or specific entries, the undersigned has the discretion to reduce awards sua sponte, independent of enumerated objections.  Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313 (Fed. Cl. 2008), aff'g, No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

### a.   Requested Hourly Rates

#### i.   Hourly Rates In General

Petitioners request compensation for their attorneys, Mr. Michael G. McLaren, Mr. William E. Cochran, Jr., and Mr. Chris Webb.[4]  Mr. McLaren requests a rate of $395.00 per hour for work performed in 2014, $410.00 per hour for work performed in 2015, $425.00 per hour for work performed in 2016, and $440.00 per hour for work performed in 2017.  See Pet'rs' App. at 9; See generally Pet'rs' App., Ex. 2.  Mr. Cochran requests a rate of $335.00 per hour for work performed in 2014, $345.00 per hour for work performed in 2015, $355.00 per hour for work performed in 2016, and $365.00 per hour for work performed in 2017.  Id.  Mr. Webb requests a rate of $285.00 per hour for work performed in 2014, $295.00 per hour for work performed in 2015, $305.00 per hour for work performed in 2016, and $315.00 per hour for work performed in 2017.  Id.

In addition to their attorneys, petitioners also seek compensation for paralegals[5] and law

---

[4]  Petitioners' application for attorneys' fees and costs references Mr. McLaren as "MGM", Mr. Cochran as "WEC," and Mr. Webb as "CJW." See Pet'rs' App. at 5-7; See generally Pet'rs' App., Ex. 2.

[5] Petitioners' application for attorneys' fees and costs identify the following four paralegals as having worked on the case: Ms. Shelly Bloor ("SB"), Ms. Kim Helms ("KH"), Ms. Laura Leigh Holdford ("LLH"), and Vickie A. Caudle ("VAC"). See Pet'rs' App. at 11, n. 2.; See generally Pet'rs' App., Ex. 2.

clerks[6] of the McLaren Firm who worked on the case.  Petitioners request a paralegal rate of $130.00 per hour for work performed in 2014, $135.00 per hour for work performed in 2015, $140.00 per hour for work performed in 2016, and $145.00 per hour for work performed in 2017.  Pet'rs' App. at 9, 11; See generally Pet'rs' App., Ex. 2.  Furthermore, petitioners request a law clerk rate of $145.00 per hour for 2015, $150.00 per hour for 2016, and $155.00 per hour for 2017.[7]  Id.

On November 4, 2016, the undersigned issued a reasoned decision in Henry v. Sec'y of Health & Human Servs., No. 15-545V, 2016 WL 7189925 (Fed. Cl. Spec. Mstr. Nov. 4, 2016), addressing hourly rates for the McLaren firm.  The undersigned concluded the McLaren firm may be compensated at forum rates[8] consistent with McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).[9]  The undersigned adopts the

---

[6] Petitioners' application for attorneys' fees and costs identifies Ms. Samantha Ward ("SRW") and Ms. Carmen Garcia ("CMG") as the law clerks that worked on the case. See Pet'rs' App. at 9; See generally Pet'rs' App., Ex. 2.  However, in a chart incorporated within the petitioners' application for attorneys' fees and costs that summarizes the total attorneys' fees request in the case, petitioners mistakenly list Ms. Ward and Ms. Garcia as "paralegals," rather than as law clerks. Id. at 11, n. 2.

[7] Petitioners' application for attorneys' fees and costs also requests a law clerk rate of $140.00 per hour for 2014. Pet'rs' App. at 9.  However, a close examination of the billing entries reveals that the only law clerk who performed work on the case in 2014, was Ms. Garcia ("CMG"), whose services were billed at a rate of $130.00 per hour. Pet'rs' App., Ex. 2 at 13.  As Ms. Garcia's requested law clerk rate for 2014 is the same rate requested for work done by McLaren firm paralegals in 2014, the undersigned finds that petitioners' request for a 2014 law clerk rate of $140.00 per hour to be in error.

[8] The undersigned granted the following hourly rates in Henry for the McLaren firm, for the years 2014 through 2016:

|  | 2014 | 2015 | 2016 |
|---|---|---|---|
| Mr. McLaren ("MGM") | $395.00 | $410.00 | $425.00 |
| Mr. Cochran ("WEC") | --- | $345.00 | $355.00 |
| Mr. Webb ("CJW") | $285.00 | $295.00 | $305.00 |
| Paralegals/ Law clerks ("SAB"; "LLH"; "VAC"; "CMG"; and "SRW") | $130.00 | $135.00-$145.00 | $145.00 |

See Henry v. Sec'y of Health & Human Servs., No. 15-545V, 2016 WL 7189925, at *1, 10 (Fed. Cl. Nov. 4, 2016).  Specifically relevant to the instant application, for the year 2016, the undersigned in Henry set the upper limit of the hourly rate for the McLaren Firm paralegals and law clerks at $145.00 per hour. Id. at *10.

[9] Specifically, McCulloch outlined the ranges of hourly rates for attorneys and paralegals of varying experience considered to be "in forum." McCulloch, at *21.  As of October 24, 2016, all sitting special masters adopted the ranges set forth in McCulloch, subsequently posting, on the Court's website, fee schedules setting the Office of Special Masters' "Attorneys' Forum Hourly

reasoning in <u>Henry</u> for the instant analysis.  In this regard, the undersigned acknowledges that <u>Henry</u> did not specifically set an hourly rate for Mr. Cochran for the year 2014.  <u>See generally</u> <u>Henry</u>.  However, the undersigned finds the petitioners' request in the instant application, for Mr. Cochran's 2014 hourly rate, to be reasonable, and in keeping with the undersigned's overall reasoning and analysis in <u>Henry</u>.  <u>Id.</u>  Thus, the undersigned awards petitioners' requested hourly rate of $335.00 per hour for work performed by Mr. Cochran in 2014.

In setting 2017 rates for the McLaren Firm, the undersigned issued two recent decisions in special processing unit ("SPU") cases, finding the 2017 Fee Schedule[10] posted on the Court's website to be persuasive in specifically resolving the McLaren firm's requested hourly rates for 2017.  <u>See</u> <u>Day v. Sec'y of Health & Human Servs.</u>, No. 16-888V, 2017 WL --- (Fed. Cl. Spec. Mstr. July 21, 2017); <u>Bartholomew v. Sec'y of Health & Human Servs.</u>, No. 16-164V, 2017 WL --- (Fed. Cl. Spec. Mstr. Aug. 3, 2017).  Notably, the undersigned in <u>Day</u> and <u>Bartholomew</u> set the upper limit of the 2017 hourly rate awarded to law clerks and paralegals of the McLaren firm at $148 per hour.  <u>Id.</u>  The undersigned also adopts the rates awarded in <u>Day</u> and <u>Bartholomew</u> for the instant decision.  With the exception of the law clerks who billed time in the case, all of the McLaren firm's 2016 and 2017 requested hourly rates fall within the 2015-2016 and 2017 Fee Schedules, and will be awarded in full.

Petitioners request $150.00 per hour for work performed by law clerks in 2016, and $155.00 per hour for work performed in 2017.  Those rates fall outside of the 2015-2016 and 2017 Fee Schedules.  Thus, in following <u>Henry</u>, <u>Day</u>, and <u>Bartholomew</u>, the undersigned awards $145.00 per hour for law clerk work in 2016, and $148.00 per hour for law clerk work in 2017.

In light of the above, the hourly rates to be awarded in this instant application are as follows:

|  | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|
| **Mr. McLaren ("MGM")** | $395.00 | $410.00 | $425.00 | $440.00 |
| **Mr. Cochran ("WEC")** | $335.00 | $345.00 | $355.00 | $365.00 |
| **Mr. Webb ("CJW")** | $285.00 | $295.00 | $305.00 | $315.00 |
| **Law clerks** | $130.00 | $145.00 | $145.00 | $148.00 |
| **Paralegal** | $130.00 | $135.00 | $140.00 | $145.00 |

---

Rate Fee Schedule" for the year 2015-2016.  <u>See</u> <u>generally</u> OSM Attorneys' Forum Hourly Rate Fee Schedules, United States Court of Federal Claims Website, http://www.uscfc.uscourts.gov/node/2914 (last visited Nov. 13, 2017.)

[10] The 2017 Fee Schedule can be accessed at: http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.

## ii. Hourly Rates For Travel Time

Petitioners request that Mr. McLaren should be awarded his full hourly rate for time spent traveling in the case. Pet'rs' App. at 10. However, consistent with <u>Henry</u>, <u>supra</u>, the undersigned reduces the hourly rates billed for attorney travel time by 50 percent.[11] <u>Henry</u> at *11. The undersigned reaches this conclusion notwithstanding the fact that Mr. McLaren was noted to be working during a portion of that time on the case *en route*. <u>See</u>, <u>e.g.</u>, <u>Hocraffer v. Sec'y of Health & Human Servs.</u>, No. 99-533V, 2011 WL 3705153, at *24 (noting that "Special Masters consistently award compensation for travel time at 50% of the billing rate in the Vaccine Program."). <u>See also Carlson v. Sec'y of Health & Human Servs.</u>, No. 15-909V, 2016 WL 8461183, at *2 (reducing the McLaren Firm's hourly rate for travel by 50% notwithstanding the fact that Mr. Webb was noted to be working during a portion of that time on case review *en route*).

The undersigned also notes that several billing entries submitted with petitioners' request constitute block-billing of travel-time, wherein Mr. McLaren billed travel time with other compensable tasks that could be compensable at a full hourly rate. <u>See e.g.</u>, Pet'rs' App., Ex. 2 at 11, 12, 25. For such entries, however, it is impossible to determine the precise portion of the time billed that should be compensated at a full hourly rate versus that which should be reduced by 50 percent. Because it is counsel's burden to document the fees claimed, the undersigned will reduce the hourly rate by 50% for the entirety of such block entries. <u>See Rodriguez v. Sec'y of Health & Human Servs.</u>, No. 06-559V, 2009 WL 2568468 (Fed. Cl. Spec. Mstr. July 29, 2009), at *8. <u>See also Broekelschen v. Sec'y of Health & Human Servs.</u>, 2008 U.S. Claims LEXIS 399, at **13-14 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (reducing petitioner's attorneys' fees and criticizing her for block billing). Indeed, the Vaccine Program's <u>Guidelines for Practice</u> state, "Each task should have its own line entry indicating the amount of time spent on that task. Lumping together several unrelated tasks in the same time entry frustrates the court's ability to assess the reasonableness of the request."[12]

Accordingly, the undersigned will reduce the hourly rates billed for travel time by Mr. McLaren, for the years 2014 through 2016, as follows:

---

[11] The billing entries submitted with petitioners' fees request reflect that, for one particular trip, travel time was split by Mr. McLaren between the present case and an unidentified case. <u>See</u>, Pet'rs' App., Ex. 2 at 21-22. Thus, the undersigned will reduce the hourly rate for those billing entries only for the hours claimed in the present case.

[12] <u>Guidelines for Practice Under the National Vaccine Injury Compensation Program</u> ("<u>Guidelines for Practice</u>") at 68 (revised April 21, 2016) found at http://www.uscfc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-4212016.pdf (last visited on Nov. 13, 2017) (Section X, Chapter 3, Part B(1)(b)).

|  | Total Time For Travel Entries | Reduced Hourly Rate After 50% Reduction | Total Amount Reduced Per Year |
|---|---|---|---|
| **2014** | 20 hours[13] | $197.50 | $3,950.00 |
| **2015** | 25.9 hours[14] | $205.00 | $5,309.50 |
| **2016** | 14.8 hours[15] | $212.50 | $3,145.00 |
| **Total Amount Reduced For Travel Time** | | | **$12,404.50** |

### b.  Reduction of Billable Hours

The undersigned has reviewed the billing records submitted with petitioners' request and finds a reduction in the number of hours billed by the McLaren Firm is appropriate for three reasons.  First, the McLaren Firm's billing entries contain numerous entries by attorneys, paralegals, and law clerks for administrative work, including for booking hotel accommodations, filing documents on CM/ECF, updating calendar deadlines, scheduling appointments, and emailing support staff.  Second, several of counsel's billing entries are vague, making it difficult for the undersigned to determine whether the task billed is reasonable.  Third, counsel's billing records contain numerous entries which are duplicative and unnecessary.[16]

---

[13] See Pet'rs' App., Ex. 2 at 11-12.

[14] See Pet'rs' App., Ex. 2 at 21-22, 25.

[15] See Pet'rs' App., Ex. 2 at 31.

[16] The undersigned finds that several of the entries constitute block billing, wherein the McLaren Firm staff billed for multiple tasks in a single entry.  Some of the blocks contain time that is predominantly not compensable, for one of the above-listed reasons, along with time that is compensable.  For such entries, it is impossible to determine the precise portion of the time billed that should be compensated.  Because it is counsel's burden to document the fees claimed, the undersigned will not compensate the time billed for the entire billing entry. See Rodriguez at *8.

The undersigned notes that these reductions are also offset by the fact that many other entries, although comprised primarily of *compensable* time, also include some non-compensable time that has not been considered for reduction because of the inability to further itemize the billing record. See e.g., Pet'rs' App., Ex. 2 at 2, paralegal billing entry of March 7, 2014 (billing entry not considered for reduction even though paralegal billed to "go online to Court's website and pull recent docket sheet for informational purposes," as the majority of the other tasks billed in that block entry were deemed to be compensable); Id. at 20, law clerk billing entry of July 27, 2015 (entry not considered for reduction even though paralegal listed billing for "fil[ing] with court" because the majority of the other tasks billed in that block were compensable);  Id. at 22, law clerk billing entry of September 9, 2015 (entry not considered for reduction even though law clerk billed to "file with court"  because other tasks in that block entry were deemed to be compensable.).

### i. Administrative Time

It is well established that billing for clerical and other secretarial work is not permitted in the Vaccine Program.  <u>Rochester v. United States</u>, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services … should be considered as normal overhead office costs included within the attorneys' fees rates"); <u>Mostovoy v. Sec'y of Health & Human Servs.</u>, 2016 WL 720969, *5 (Fed. Cl. Spec.Mstr. Feb. 4, 2016).

The McLaren Firm's time sheets contain numerous entries that are best characterized as administrative work.  For example, Mr. McLaren billed time for making travel plans for the case, overseeing the re-organization of the case file, finding specific documents within his case files, exchanging emails regarding the calendaring of deadlines, and putting files away after the hearing in the case.[17]  Similarly, Mr. Webb billed time for reviewing the case file for the purpose of confirming upcoming deadlines, and for reviewing and saving invoices from service professionals employed in the case.[18]

The law clerks that worked on the case also billed for a plethora of administrative tasks.  Ms. Ward's time entries reflect numerous instances where time was billed for administrative tasks such as: saving photographs to the case file; making phone calls to service providers specializing in procuring copies of case-related DVDs; acknowledging receipt of scheduling orders and calendaring deadlines; filing exhibits; scanning and saving exhibits to file; answering phone calls from petitioners to relay the address of the Court prior to the evidentiary hearing held in the case; receiving and saving invoices to the case file from petitioners' expert witness; and transcribing telephone messages from petitioners for their attorneys.[19]  Similarly, Ms. Garcia billed time for such tasks as scanning and saving documents to the case file.[20]

Moreover, the billing entries of the paralegals that worked on the case also reflect numerous instances where time was billed for administrative work such as: saving medical records to the firm's internal systems; filing documents; downloading docket sheets for the case; creating sub files for various documents generated throughout the litigation; setting up travel arrangements for Mr. McLaren; preparing materials for meetings; and calendaring deadlines.[21]

These types of entries highlighted above do not constitute billable time, and the undersigned thus reduces petitioners' fee award for them.[22]

---

[17] See <u>e.g.</u>, Pet'rs' App., Ex. 2 at 18-19, 25-26, 28.

[18] See <u>e.g.</u>, Pet'rs' App., Ex. 2 at 15, 18, 31.

[19] See <u>e.g.</u>, Pet'rs' App., Ex. 2 at 20-21, 23-25, 28, 30-31, 35.

[20] See <u>e.g.</u>, Pet'rs' App., Ex. 2 at 17, 21.

[21] See <u>e.g.</u>, Pet'rs' App., Ex. 2 at 2, 5, 10-12, 14-15, 21, 24.

[22] The entries listed above do not constitute an exhaustive list of administrative entries in

### ii.   Vague Entries By Attorneys Of The McLaren Firm

The undersigned has previously found it reasonable to decrease an award of attorneys' fees for vagueness.  Mostovoy v. Sec'y of Health and Human Servs, No. 02-10V, 2016 WL 720969 (Fed. Cl. Feb. 4, 2016); Barry v. Sec'y of Health and Human Servs., No. 12-39V, 2016 WL 6835542 (Fed. Cl. Spec. Mstr. Oct. 25, 2016) (reducing a fee award by ten percent due to vague billing entries); Davis v. Sec'y of Health and Human Servs., No. 15-159V, 2017 WL 877277, at *4 (Fed. Cl. Feb. 7, 2017) (reducing a fee award for vague entries).  It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable.  Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751, 760 (1989); Rodriguez v. Sec'y of Health & Human Servs., 2009 WL 2568468 (Fed. Cl. Spec. Mast. June 27, 2009).  Petitioners bear the burden of documenting the fees and costs claimed. Id. at *8.

The undersigned finds several vague billing entries in this case.  For instance, Mr. Webb's November 15, 2016 billing entry of "review file for status" represents one such vague entry. Pet'rs' App., Ex. 2 at 36.  Time records should be sufficiently detailed so that the undersigned may understand the amount of time being spent and the work being performed.  These types of entries do not include sufficient detail about what tasks were being performed and/or why.  The undersigned thus reduces petitioners' fee award for such vague entries.[23]

### iii.   Unnecessary and Redundant Billing Entries

It is well established that "[c]ounsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary.""  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at *1521.  After a careful review of the billing records in this case, undersigned finds several of the McLaren Firm's billing entries unnecessary, duplicative, or both.

For instance, Mr. Webb periodically listed entries throughout the billing records for tasks that the undersigned deems to be unnecessary, including for tasks such as: "review docket for new information"[24]; "review file for status"[25]; "review ECF docket to make sure nothing new has been

---

petitioners' attorneys' billing records but rather are intended to serve as an example of those types of entries.

[23] The entry listed does not constitute an exhaustive list of vague entries in the McLaren Firm's billing records but rather is intended to serve as an example of those types of entries.

[24] Mr. Webb's November 10, 2016 billing entry.  Pet'rs' App., Ex. 2 at 36.

[25] Mr. Webb's December 15, 2016 billing entry.  Id.

entered"[26]; "conduct full periodic status review of entire file to update staff and other attorneys on where we are and what is coming up"[27]; "review file and note length of time between hearing and decision…note file for follow up."[28]  The undersigned further notes that the unnecessary entries listed here were taken only from a *single page* of petitioners' billing, and thereby do not constitute an exhaustive list of all of the unnecessary billing entries entered by Mr. Webb  throughout the billing records.

Similarly, Mr. McLaren also listed billing entries that the undersigned found to be unnecessary and redundant, including entries for tasks such as: "see to substitution of counsel,"[29] and to "go over minute entry for proceedings,"[30] a billing entry that was redundant as Mr. Webb also billed for that same exact task.[31]

### iv.  Reduction of Billable Hours Summary

For these reasons, and after carefully reviewing petitioners' application, the undersigned reduces petitioners' attorneys' fees award.  In making reductions, a line-by-line evaluation of the fee application is not required.  Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 484 (1991), rev'd on other grounds and aff'd in  relevant part, 988 F.2d 131 (Fed. Cir. 1993). Special masters may rely on their experience with  the Vaccine Act and its attorneys to determine the reasonable number of hours expended.  Id.  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled  to use their prior experience in reviewing fee applications."  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

Therefore, the undersigned further reduces petitioners' fee request by 10 percent.  This 10 percent reduction is in addition to the law clerk hourly rate reductions for 2016 and 2017, and to the reduction for the full hourly rates billed for travel time by Mr. McLaren.

---

[26] Mr. Webb's January 5, 2017 billing entry.  Id.

[27] Mr. Webb's January 13, 2017 billing entry.  Id.

[28] Mr. Webb's January 27, 2017 billing entry.  Id.

[29] Mr. McLaren's March 11, 2014 billing entry.  Id. at 3.

[30] Mr. McLaren's November 4, 2015 billing entry.  Id. at 26.

[31] Mr. Webb's November 4, 2015 billing entry.  Id. at 25.

### c.  Total Reduction of Requested Fees

Reducing for Mr. McLaren's billed travel time rate by 50%, in addition to reducing the 2016-2017 law clerk rates to those above, results in the following adjustments:

| Year | Person | Billed Time | Travel Time, If Applicable | Requested Hourly Rate | Adjusted Rate, If Applicable | Billed Amount | Adjusted Amount |
|------|--------|-------------|----------------------------|-----------------------|------------------------------|---------------|-----------------|
| 2014 | McLaren | 13.80 | --- | $395.00 | --- | $5,451.00 | $5,451.00 |
| 2014 | McLaren | --- | 20.00 | $395.00 | $197.50 | $7,900.00 | $3,950.00 |
| 2015 | McLaren | 51.80 | --- | $410.00 | --- | $21,238.00 | $21,238.00 |
| 2015 | McLaren | --- | 25.90 | $410.00 | $205.00 | $10,619.00 | $5,309.50 |
| 2016 | McLaren | 24.80 | --- | $425.00 | --- | $10,540.00 | $10,540.00 |
| 2016 | McLaren | --- | 14.80 | $425.00 | $212.50 | $6,290.00 | $3,145.00 |
| 2017 | McLaren | 4.30 | --- | $440.00 | --- | $1,892.00 | $1,892.00 |
| 2014 | Cochran | 9.60 | --- | $335.00 | --- | $3,216.00 | $3,216.00 |
| 2015 | Cochran | 1.40 | --- | $345.00 | --- | $483.00 | $483.00 |
| 2016 | Cochran | 0.40 | --- | $355.00 | --- | $142.00 | $142.00 |
| 2017 | Cochran | 2.10 | --- | $365.00 | --- | $766.50 | $766.50 |
| 2014 | Webb | 61.80 | --- | $285.00 | --- | $17,613.00 | $17,613.00 |
| 2015 | Webb | 64.20 | --- | $295.00 | --- | $18,939.00 | $18,939.00 |
| 2016 | Webb | 23.30 | --- | $305.00 | --- | $7,106.50 | $7,106.50 |
| 2017 | Webb | 17.40 | --- | $315.00 | --- | $5,481.00 | $5,481.00 |
| 2014 | Bloor | 21.80 | --- | $130.00 | --- | $2,834.00 | $2,834.00 |
| 2015 | Bloor | 10.60 | --- | $135.00 | --- | $1,431.00 | $1,431.00 |
| 2016 | Bloor | 3.60 | --- | $140.00 | --- | $504.00 | $504.00 |
| 2014 | Helms | 3.90 | --- | $130.00 | --- | $507.00 | $507.00 |
| 2015 | Holdford | 2.00 | --- | $130.00 | --- | $260.00 | $260.00 |
| 2014 | Caudle | 1.80 | --- | $130.00 | --- | $234.00 | $234.00 |
| 2015 | Caudle | 0.50 | --- | $135.00 | --- | $67.50 | $67.50 |
| 2014 | Garcia | 0.60 | --- | $130.00 | --- | $78.00 | $78.00 |
| 2015 | Garcia | 0.50 | --- | $145.00 | --- | $72.50 | $72.50 |
| 2016 | Garcia | 0.10 | --- | $150.00 | $145.00 | $15.00 | $14.50 |
| 2015 | Ward | 6.20 | --- | $145.00 | --- | $899.00 | $899.00 |
| 2016 | Ward | 7.60 | --- | $150.00 | $145.00 | $1,140.00 | $1,102.00 |
| 2017 | Ward | 5.30 | --- | $155.00 | $148.00 | $821.50 | $784.40 |
| | | | | Billed Amount Total: | | $126,540.50 | |
| | | | | **Adjusted Amount Total:** | | | **$114,060.40** |

The rate adjustments shown above reduce the billed amount to $114,060.40, a reduction of $12,480.10.  As also discussed, the undersigned makes a further reduction of 10 percent ($11,406.04[32]) to address the deficient billing practices mentioned above.  Thus, petitioners are awarded a total of $102,654.36 in attorneys' fees.

### III.    Reasonable Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable.  Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992).  Petitioners request $37,215.14 in attorneys' costs.  Pet'rs' App. at 11.  For the reasons set forth below, the undersigned awards petitioners $20,714.74 in attorneys' costs.

### a.   Expert costs – Dr. Richard Boles

Petitioners request a total of $30,000.00 in expert fees for Dr. Boles.  The request is supported, in part, by invoices from Dr. Boles detailing the hours expended, hourly rate charged, and providing some information about the services performed.[33]  See generally Pet'rs' App., Ex. 2 at 103-106.  Dr. Boles prepared expert reports in this case and testified at the hearing.  He performed work on the case from 2014 through 2016.  Dr. Boles billed most of his time at a rate of $500.00 per hour, with the exception of courtroom time, which he billed at $800.00 per hour.  Id.; see also Pet'rs' App. at 10.

As an initial matter, Dr. Boles's requested rates of $500.00 to $800.00 per hour are clearly excessive.   Generally, the highest hourly rate awarded to any expert in the Program is $500 per hour.  The undersigned typically reserves that rate for highly-credentialed, experienced, and competent Vaccine Act expert witnesses.  In this case, the record clearly goes against such high hourly rates for Dr. Boles.  Throughout his Entitlement Decision, then-Special Master Hastings extensively highlighted reasons[34] that he found Dr. Boles to be a questionable expert witness, even concluding his lengthy Entitlement Decision with an explicit warning to future Vaccine Act counsel *against* the use of Dr. Boles in future cases.  Specifically, then-Special Master Hastings concluded as follows:

For the reasons described in detail [in the Entitlement Decision] above, I found Dr. Boles'

---

[32]  $114,060.40 x 0.10 = $11,406.04.

[33] The undersigned notes, however, that several of Dr. Boles's billing entries constitute block billing.

[34] Dempsey v. Sec'y of Health & Human Servs., No. 04-394V, 2017 WL 1058480, at *16 (Fed. Cl. Feb. 23, 2017) ("The causation opinion of Petitioners' expert, Dr. Boles, was premised upon factual assumptions that run *contrary* to the clinical history presented by the medical records."); Id. at *22 ("Dr. Boles' willingness to suddenly, with virtually no explanation, [change his opinion at the evidentiary hearing], made me question whether *any* assumption of fact would change Dr. Boles' opinion that the MMR vaccine harmed K.J.D.'s brain.  This, in my view, made Dr. Boles appear to be an inconsistent witness.").

presentation in this case to be extremely poorly explained, inconsistent, and totally unpersuasive.  Therefore, I also warn Vaccine Act counsel of the possibility that, despite Dr. Boles' credentials in the area of mitochondrial disorders, use of Dr. Boles as an expert witness in the future may not be considered reasonable.

Dempsey, at *35.  In light of the above, the undersigned finds that a reasonable hourly rate for Dr. Boles in this case is $300.

Dr. Boles expended 57 hours on this case, 20 hours of which were for travel.  Pet'rs' App., Ex. 2 at 103-104.  For the same reasons discussed above with regard to counsel's hours, travel will be compensated at a 50% rate.  Rodriguez, 2009 WL 2568468, at *21.  In examining Dr. Boles's remaining billing entries, the undersigned reduces 0.5 hours for time Dr. Boles billed for administrative tasks of "[a]rranging flights and correspondence with legal office." Pet'rs' App., Ex. 2 at 103.  Although the remainder of the billing entries will be awarded in the present case, the undersigned emphasizes that billing time in large blocks, including for expert witness billing invoices, prevents a detailed review, and "frustrates the court's ability to assess the reasonableness of the request."  Valdes v. Sec'y of Health & Human Servs., 89 Fed. Cl. 415, 424 (2009) (upholding the special master's reduction of costs for expert where expert billed his time in two large blocks) (quoting Broekelschen, 2008 WL 5456319, at *4-5.

In light of the discussion above, Dr. Boles's adjusted hours and billing rate are as follows:

|  | Adjusted Number of Hours | Adjusted Hourly Rate | Adjusted Amount |
|---|---|---|---|
| Non-Travel Time | 36.50 | $300.00 | $10,950.00 |
| Travel Time | 20.00 | $150.00 | $3,000.00 |
| Adjusted Amount Total: | | | $13,950.00 |

Accordingly, the undersigned will award a total of $13,950.00 in expert fees for Dr. Boles. This amount represents 36.50 hours compensated at $300 per hour, and 20.00 hours of travel compensated at $150.00 per hour.  This results in a reduction of $16,050.00 for expert fees.

**b.  Travel Expenses**

Upon a close examination of the travel expenses incurred by counsel, the undersigned reduces several of the claimed expenses.

Mr. McLaren requested $115.28 (including $100.20 for dinner and $15.08 for another meal in Pasadena, California) for food expenses on September 4, 2015.  Pet'rs' App., Ex. 2 at 42.  The undersigned finds the requested amount to be unreasonable, especially since counsel did not submit a receipt of the incurred dinner expenses.  See generally Id.  Thus, the undersigned reduces the total food expenses to $71, an amount reflective of 2015 federal per diem rates for meals and incidental

expenses for Pasadena, California.[35]  This results in a reduction of $44.28.

Mr. McLaren also requests $80.04 (including $62.00 for dinner in Pittsburgh, PA and $18.04 for another meal *en route* to Pittsburgh) for food expenses on October 27, 2015.  Pet'rs' App., Ex. 2 at 42.  The undersigned finds the requested amount to be unreasonable, especially since counsel did not submit a receipt of the incurred meal expenses.  See generally Id.  Thus, the undersigned reduces the total food expenses to $71, an amount reflective of 2015 federal per diem rates for meals and incidental expenses for Pittsburgh, Pennsylvania.[36]  This results in a reduction of $9.04.

Mr. McLaren submits an invoice from his hotel accommodations in Washington, D.C. during his stay on January 13 and 14, 2016 for the evidentiary hearing in the case.  Pet'rs' App., Ex. 2 at 43, 88.  He requests a total of $805.76 for his hotel accommodations, the bulk of which the undersigned finds reasonable.  Id.  However, this hotel accommodation invoice also includes several unreasonable meal charges for a room-service dinner on January 13, 2016 (totaling $95.36), a room-service breakfast on January 14, 2016 (totaling $32.48), and mini-bar expenses from January 14, 2016 for potato chips and candy (totaling $22.00).  Id. at 88.  As an initial matter, the undersigned notes that these meal expenses, itemized as part of counsel's hotel receipt for January 13 and 14, 2016, are *in addition to* other meal expenses claimed by counsel for those two dates.  For instance, Mr. McLaren requests an additional $36.81 (including $23.91 for lunch and $12.90 for a snack) for food expenses on January 13, 2016.  Id. at 42-43.  Similarly, he requests an additional $142.26 (including $22.80 for a snack and $119.46 for dinner) for food expenses on January 14, 2016.  Id. at 43.  Thus, in total, Mr. McLaren requests $132.17 for meals expenses on January 13, 2016, and requests $196.74 for meal expenses on January 14, 2016.  The undersigned finds the total requested amount to be unreasonable and reduces it to $69.00 per day, an amount reflective of 2016 federal per diem rates for meals and incidental expenses for Washington, D.C.[37]  This results in a reduction of the claimed meal expenses of $190.91.

Mr. McLaren additionally requests $31.09 in cab fare and tips, for transportation to and from Best Buy to fix his computer on January 13, 2016.  Pet'rs' App., Ex. 2 at 42-43, 97.  In the undersigned's view, this expense is better classified as an expense generally incurred as part of equipment maintenance overhead expenses operating the McLaren Firm.  Thus, the undersigned rejects this entire expense amount.

---

[35] See GSA FY 2015 Per Diem Rates for Pasadena, California, at https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup.

[36] See GSA FY 2015 Per Diem Rates for Pittsburgh, PA, at https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup.

[37] See GSA FY 2016 Per Diem Rates for Washington, D.C., at https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup.

### c.   Other Expenses

The undersigned has reviewed all other expenses incurred by the McLaren Firm in the case, such as expenses for photocopying, record duplication, and postage, and finds a majority of such expenses to be reasonable.  However, the undersigned reduces several requested expenses for lack of sufficient documentation.[38]  These requested expenses include costs for "long distance telephone," "computer assisted research," and "PACER service fees."  Pet'rs' App., Ex. 2 at 41.  In the undersigned's view, these claimed costs by the McLaren Firm are better categorized as overheard expenses inherent in operating a law firm, and thus  rejects those expenses in its' entirety.  This results in a reduction amount of $172.28.

Similarly, the undersigned rejects the mileage expense of $2.80 claimed by Ms. Garcia for unexplained case-related travel.  Id.  This results in a reduction of $2.80.

### d.   Reduction of Attorneys' Costs Summary

Based upon the above analysis, calculating the reductions for attorneys' costs results in the following adjustments:

| | |
|---|---|
| **Attorneys' costs requested**: | $37,215.14 |
| Reductions for expert costs: | ($16,050.00) |
| Reductions for travel costs: | ($275.32)[39] |
| Reductions for other costs: | ($175.08)[40] |
| **Total Attorneys' costs awarded**: | **$20,714.74** |

These adjustments results in a total reduction of $16,500.40.

## IV.   Petitioners' Costs

Petitioners request a total of $120.00 in out-of-pocket costs.  Pet'rs' App. at 3-4; see also Pet'rs' App., Ex. 3 at 1-2.  These incurred costs are from expenses for a home health nurse to care for K.J.D. while petitioners testified at the fact hearing in this case.  Id.  The undersigned finds these costs reasonable and will reimburse them in full.

---

[38] See Guidelines for Practice, supra at 69 (Section X, Chapter 3, Part (B)(2)).

[39] Represents the total reductions in the "travel costs" reduced above:  $44.28 + $9.04 + $190.91 + $31.09 = $275.32.

[40] Represents the total reductions in the "other costs" reduced above:  $172.28 + $2.80 = $175.08.

### V.      Conclusion

The undersigned awards petitioners the following for attorneys' fees and costs:

**Attorneys' Fees**

| | |
|---|---|
| Requested attorneys' fees: | $126,540.50 |
| Reductions (attorney travel and paralegal rates): | ($12,480.10) |
| Reductions (10% for billing issues): | ($11,406.04) |
| Adjusted Total Fees Awarded: | **$102,654.36** |

**Attorneys' Costs**

| | |
|---|---|
| Requested attorneys' costs: | $37,215.14 |
| Total Reductions: | (16,500.40) |
| Adjusted Total Costs Awarded: | **$20,714.74** |

**Total Attorneys' Fees and Costs Awarded:**      **$123,369.10**

The undersigned awards petitioners the following for their out-of-pocket costs:

**Petitioners' Costs**

| | |
|---|---|
| Requested petitioners' costs: | $120.00 |
| Reductions: | ($0.00) |

**Total Petitioners' Costs Awarded:**      $120.00

Accordingly, the undersigned awards:

**(1) A lump sum in the amount of $120.00, representing reimbursement for petitioners' costs, in the form of a check payable to petitioners, Mr. Brian Dempsey and Mrs. Claire Dempsey;  and**

**(2) A lump sum in the amount of $123,369.10, representing reimbursement for attorneys' fees and costs, in the form of a check payable jointly to petitioners, Mr. Brian Dempsey and Mrs. Claire Dempsey, and their counsel, Michael G. McLaren.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[41]

**IT IS SO ORDERED.**

s/Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master

---

[41] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.